IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **HANNA AQUINO**, an individual residing in St. Petersburg, Florida, and **SUSAN ENGLAR**, in her capacity as personal representative of the Estate of Max Linn, an individual residing in St. Petersburg, Florida,<br><br>    Plaintiffs,<br><br>v.<br><br>**MATTHEW T. MCDONALD**, an individual residing in Rockland, Maine,<br><br>    Defendant. | Civil Action No. _____ |

**COMPLAINT**

Hanna Aquino and Susan Englar, in her capacity as personal representative of the Estate of Max Linn ("Plaintiffs"), complain against Matthew T. McDonald ("Defendant"), as follows:

**Nature of the Action**

1. Matthew McDonald—former friend, campaign advisor, and trusted advisor of Max Linn—induced Linn to transfer funds to McDonald for the purpose of investing in certain digital assets. Trusting McDonald completely, Linn transferred the money as requested. McDonald lied to Linn, telling him that the money had been invested. Despite repeated requests, McDonald never gave Linn access to his accounts or any of the money. This caused Linn (and his wife, Hanna Aquino) significant distress, and ultimately contributed to his untimely death.

20650706.4

**Parties**

2. Plaintiff Hanna Aquino was the wife of Max Linn and is a beneficiary of his estate. She is domiciled in St. Petersburg, Florida.

3. Plaintiff Susan Englar is the personal representative of the estate of Max Linn. See *in re Estate of Max P. Linn*, Case No. 22-001668-ES, Circuit Court for Pinellas County, FL (Mar. 16, 2022). She is domiciled in St. Petersburg, Florida.

4. Upon information and belief, Defendant Matthew McDonald is domiciled in Hancock County, Maine.

**Jurisdiction and Venue**

5. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

6. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this claim occurred in Maine and McDonald is domiciled in Maine.

**Factual Allegations**

7. McDonald was Linn's former campaign staffer and worked on Linn's United States Senate campaign in 2020. For a time, Linn considered McDonald to be a friend.

8. McDonald had an understanding of cryptocurrency, and in 2021, McDonald agreed to invest Linn and Aquino's money in certain digital assets.

9. The money that Linn transferred was the marital property of Linn and Aquino. Aquino agreed to the money transfers for the purpose of investment and expected

to benefit from the investments. McDonald was aware of the relationship between Linn and Aquino.

10. Linn transferred money to McDonald for the purpose of investing in cryptocurrency on multiple occasions.

11. Throughout the second half of 2021, Linn asked McDonald for updates on the status of the investments. McDonald responded that the money had been invested, even though he knew that these statements were untrue. He did not invest the money as promised, and he lied about this on multiple occasions.

12. Linn and Aquino trusted McDonald to use their money for their benefit. They did not have access to the accounts themselves and relied on McDonald entirely.

13. By August 2021, Linn requested full access to the accounts. McDonald replied that he would work on this, but he never did.

14. Despite Linn's pleas, in September 2021, McDonald cut off contact.

15. Through this scheme, McDonald stole at least $225,000 from Linn and Aquino.

16. Linn and Aquino relied on McDonald's promises to invest their money, to their detriment.

17. On October 6, 2021, McDonald filed a protection from harassment complaint against Linn. *See* Docket No. ELLDC-PA-2021-00186. In the complaint, McDonald himself alleged that "[i]n the middle of this year Max talked me into crypto investing with him; he would provide the capital and it would be under my name." A hearing on McDonald's complaint was set for November 17, 2021.

18. In connection with the protection from harassment lawsuit, Linn, through counsel, subpoenaed records and materials from the Bar Harbor and Mount Desert Police Departments. A narrative report was produced from an October 5, 2021, call with McDonald.

19. The report demonstrates that McDonald and Linn were once close friends, that Linn was not good with computers, that that he trusted and relied on McDonald. *See, e.g.*, the following:

    - "Matthew explained that he and Max had been friends and that Max had him get the cryptocurrency."
    - "He stated that he was never full time and it was more part-time work while Max was doing his political campaign. He stated that Max was have him write speeches, do podcasts, and do a lot of computer related activities as Matthew stated that Max was not very literate with computers. Matthew explained that they grew a nice friendship and that Max even stood in Matthew's wedding. Matthew stated that then this all happened."

20. The report demonstrates that McDonald and Linn agreed that Linn would transfer money to McDonald for the purpose of investing in cryptocurrency, and after a few years, the money would largely be returned to Linn. *See, e.g.*, the following:

    - "Matthew went on to explain that Max has been in Indonesia for the last four months. Max's wife is from Indonesia and they were over there for the last four months. Matthew explained that while Max was in Indonesia, he contacted Matthew and had him acquire some cryptocurrency investments with Matthew understanding that they were just investments."
    - "Matthew went on to explain that Max is a multimillionaire and Max was just asking for Matthews help with the investment."
    - "Matthew then again explained, but in more detail, how he got involved in the investment. Max first stated to Matthew that Matthew should set up the account, Max would pay all of the money, and that in a number of years when it was worth more, they would pull all the money. Max would then take a big chunk of it and that Matthew would get some for helping Max out."
    - "I then asked if Max's name was ever on the cryptocurrency account. Matthew stated that it was not and that everything was in his name. Max would just send him the money and tell him to buy more cryptocurrency with it."

21. The report demonstrates that the cryptocurrency was worth a lot of (Linn's) money—at least $225,000. *See, e.g.*, the following:

- "Matthew again stated that it was a significant amount of money. He stated that it was over six figures. I confirmed what he said and Matthew stated that it was approximately $225,000 dollars invested on the cryptocurrency."
- "Matthew again stated that the cryptocurrency was worth $225,000 dollars."

22. The report demonstrates that McDonald liquidated the money and has not returned it. *See, e.g.*, the following:

- "Matthew explained that the cryptocurrency was held on something similar to a thumb-drive. When Matthew found out what Max was doing with it, he didn't want any part of it and "liquidated it." He advised that he thought that it might not have been the right thing to do but didn't want to be involved in drug dealing and that he was told that it was just an investment."
- "Matthew then talked about how he "liquidated" the cryptocurrency. He stated that he knew what he did may have been wrong, but that he just "liquidated" it because he didn't know what else to do. I confirmed with what he meant by "liquidated." Matthew explained that all of Max's cryptocurrency was gone."
- "I confirmed with Matthew that since the cryptocurrency was gone and that Max was not able to use it anymore since it was gone. I then explained to Matthew that since the cryptocurrency was gone, it didn't seem like there was a way that Max was going to be able to use it to buy drugs under Matthew's name. Matthew was still concerned because he knew that Max was going to want that cryptocurrency but Matthew knew it wasn't there because he wiped it out stating that be didn't want it to be used to buy drugs under his name. Matthew explained to me that how he got rid of the cryptocurrency was that he put it into "futures and ran it." He stated that in 40 minutes, all of it was gone."

23. On November 15, 2021, Linn, through counsel, also issued a subpoena to McDonald. The subpoena commanded that McDonald bring to the hearing "banking records reflecting banking activity in any account to which you have an interest between the dates of March 2021, to the present date; and . . . is issued on application of the Defendant, Max Linn."

24. On November 16, 2021, McDonald moved to quash the subpoena, arguing that "BBVA Bank, the bank that was used for transactions is no longer in business as it was acquired by PNC Bank and the sale was finalized on October 4th, 2021 and records of the old BBVA accounts only date back three months online."

25. McDonald then moved to dismiss his own complaint on December 1, 2021, which the Court granted the same day.

26. In addition to the financial loss, these events had significant and serious impacts on Linn's and Aquino's mental and physical health, including severe stress.

27. On December 11, 2021, Linn died of an apparent heart attack. Aquino discovered her husband in a hot tub, and his death has caused severe emotional distress to Aquino.[1]

28. On April 6, 2023, McDonald was indicted by the Hancock County grand jury on the charge of theft by deception. The grand jury found that McDonald committed theft pursuant to one scheme or course of conduct by obtaining or exercising control over the property of Max Linn, such property consisting of money with an aggregate value in excess of $10,000, with the intent to deprive Max Linn thereof, and as a result of deception, in that the McDonald did intentionally create or reinforce the impression that he would invest money in certain digital assets on Linn's behalf, which impression was false and which McDonald did not believe to be true, all in violation of Maine's theft by deception statute, 17-A M.R.S. §§ 352(5)(E), 354(1)(B)(1).

---

[1] *See Max Linn, Attention-Grabbing US Senate Candidate, Dies at 62*, Bangor Daily News (Dec. 13, 2021), available at: https://www.bangordailynews.com/2021/12/13/politics/max-linn-former-us-senate-hopeful-known-for-request-denied-jab-dies-at-62/.

20650706.4

## Causes of Action

### COUNT I – FRAUD

29. Plaintiffs repeat the allegations in the preceding paragraphs.

30. McDonald made false representations of material facts by telling Linn that he would invest Linn and Aquino's money in certain digital assets and by promising to give Linn full access to the accounts.

31. McDonald knew that these representations were false, or acted in reckless disregard of their truth or falsity.

32. McDonald made these representations to induce Linn to continue giving McDonald money.

33. Linn and Aquino justifiably relied on McDonald's misrepresentations, to their detriment.

34. Plaintiffs have suffered damages as a result, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

### COUNT II – CONSTRUCTIVE FRAUD

35. Plaintiffs repeat the allegations in the preceding paragraphs.

36. Linn transferred money to McDonald for the purpose of investing in certain digital assets.

37. McDonald promised to invest that money, for the benefit of Linn and Aquino.

38. Linn was induced to transfer money to McDonald through reliance on McDonald's friendship, promises, and superior experience with cryptocurrency.

20650706.4

39.  Plaintiffs have suffered damages as a result, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

## COUNT III – BREACH OF CONTRACT

40.  Plaintiffs repeat the allegations in the preceding paragraphs.

41.  McDonald and Linn entered into a contract whereby Linn was to transfer money to McDonald and McDonald was to invest that money in certain digital assets.

42.  Linn transferred money to McDonald for purposes of investment pursuant to the contract.

43.  McDonald breached the contract by failing to invest Linn and Aquino's money in cryptocurrency as agreed upon and by failing to return the money to Linn and Aquino.

44.  Plaintiffs have suffered damages as a result, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

## COUNT IV – PROMISSORY ESTOPPEL

45.  Plaintiffs repeat the allegations in the preceding paragraphs.

46.  McDonald promised to invest Linn and Aquino's money in certain digital assets.

47.  McDonald has failed to comply with his promise and has kept the money that Linn transferred to him.

48.  Injustice can only be avoided by seeking compensation for lack of compliance with this promise.

20650706.4

## COUNT V – UNJUST ENRICHMENT

49. Plaintiffs repeat the allegations in the preceding paragraphs.

50. Linn conferred a benefit on McDonald when he transferred money to McDonald for the purpose of investment for his and Aquino's benefit.

51. McDonald had knowledge of these benefit.

52. McDonald's acceptance of this money was inequitable because it was premised on multiple misrepresentations and other fraudulent acts or omissions by McDonald.

## COUNT VI – CONSTRUCTIVE TRUST

53. Plaintiffs repeat the allegations in the preceding paragraphs.

54. Linn was induced to act through reliance on a relationship of trust which was founded on moral, social, personal, and also legal duties.

55. McDonald retained ownership of Linn and Aquino's money after agreeing to hold the same for the benefit of Linn and Aquino.

56. If McDonald retains the money, he will be unjustly enriched.

57. A constructive trust is necessary and appropriate in this case to do equity and to prevent unjust enrichment of McDonald because McDonald obtained Linn and Aquino's money as a result of as a result of invalid transactions, fraud, misrepresentation, duress, undue influence, in violation of fiduciary duty, and/or conversion.

## COUNT VII – BREACH OF FIDUCIARY DUTY

58. Plaintiffs repeat the allegations in the preceding paragraphs.

59. Linn and Aquino gave McDonald full access to the money Linn transferred, and they relied on McDonald to manage this money and invest it in certain digital assets.

20650706.4

60. As Linn and Aquino's agent, McDonald had a fiduciary relationship with them and an obligation to act for their benefit.

61. McDonald also had a duty to render an accounting when asked.

62. McDonald breached his fiduciary duties through multiple misrepresentations and other fraudulent acts or omissions, as set out in the preceding counts.

63. Plaintiffs have suffered damages as a result, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

**COUNT VIII – TORTIOUS INTERFERNECE WITH EXPECTED INHERITANCE**

64. Plaintiffs repeat the allegations in the preceding paragraphs.

65. Linn and Aquino were married. The money that was transferred to McDonald was marital property, and Aquino expected to benefit from the investments.

66. Linn communicated to Aquino that she would be a beneficiary of his estate. Aquino expected to receive the money that McDonald was supposed to invest.

67. As a result of McDonald's tortious conduct, Linn transferred his and Aquino's money to McDonald to invest. McDonald has not returned this money.

68. McDonald's actions were motivated by ill will and/or were so outrageous that malice is implied.

69. As a result of McDonald's actions, Aquino was damaged.

**COUNT IX –INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

70. Plaintiffs repeat the allegations in the preceding paragraphs.

71. McDonald intentionally or recklessly inflicted severe emotional distress upon Aquino.

72. The conduct of McDonald was so extreme and outrageous as to exceed all possible bounds of decency and would be regarded as atrocious and utterly intolerable in a civilized community.

73. McDonald's actions proximately caused Aquino emotional distress, pain and suffering, and such distress is so severe that no reasonable person should be expected to endure it.

74. McDonald acted intentionally, knowingly, willfully, wantonly, and with malice by, inter alia, convincing Linn transfer Linn and Aquino's money to him, promising to invest that money in certain digital assets, failing to do so, and keeping the money for himself.

75. As a result of McDonald's conduct, Aquino has been damaged.

76. Plaintiffs are entitled to punitive damages in an amount sufficient to punish McDonald for his malicious conduct and to deter such conduct in the future.

## COUNT X - CONVERSION

77. Plaintiffs repeat the allegations in the preceding paragraphs.

78. Linn and Aquino held property interests in the money that Linn transferred to McDonald.

79. Linn possessed and transferred the money to McDonald.

80. Despite demands to access the funds and to return the funds, McDonald repeatedly refused and deprived Linn of his rightful access to the money.

81. Plaintiffs have suffered damages as a result, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

20650706.4

**COUNT XI - NEGLIGENCE**

82. Plaintiffs repeat the allegations in the preceding paragraphs.

83. McDonald owed a duty to Linn and Aquino to exercise reasonable care in managing and investing their money.

84. McDonald intentionally created the impression he would invest the money on Linn and Aquino's behalf, but he failed to do so.

85. In taking Linn and Aquino's money, negligently managing it, and failing to invest it or return it, McDonald has breached his duty of care.

86. Plaintiffs have suffered damages as a result of McDonald's negligence, including but not limited to economic loss, deprivation of value of money, expenditure of time, money, and resources, and pain and suffering.

**Relief Requested**

WHEREFORE, Plaintiffs demand judgment against Defendant for damages in an appropriate amount to compensate Plaintiffs, costs, interest, and such other and further relief as the Court deems just.

Dated at Portland, Maine this 7th day of August, 2023.

Respectfully submitted,
HANNA AQUINO and SUSAN ENGLAR

by their attorneys,
PRETI FLAHERTY BELIVEAU & PACHIOS, LLP

/s/ Severin M. Beliveau
Severin M. Beliveau, Esq., Bar No. 1241
Alexandra Harriman, Esq., Bar No. 6172
One City Center, P.O. Box 9546
Portland, ME  04112-9546
(207) 791-3000
sbeliveau@preti.com
aharriman@preti.com

20650706.4